IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| JOHN CHARLES WHITE,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,<br><br>    Defendant. | Civil No. 18-10317 (RMB)<br><br>**MEMORANDUM OPINION AND ORDER** |

**BUMB**, United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff John Charles White from a denial of social security disability benefits on June 4, 2014. The denial of benefits was upheld by the Administrative Law Judge ("ALJ") on May 7, 2017. [Record of Proceedings, "R.P.", p. 37]. The ALJ's decision is the final decision of the Commissioner. [Id.]. Plaintiff commenced this civil action seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons set forth below, the Court **VACATES** the decision of the ALJ and **REMANDS** for proceedings consistent with this Memorandum Opinion and Order.

1

**I.     STANDARD OF REVIEW**

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000).  The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  The Act further states,

2

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In <u>Plummer</u>, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

## II. FACTUAL & PROCEDURAL BACKGROUND

### A. Procedural History

The Court recites only the facts that are necessary to its determination on appeal, which is narrow.

Plaintiff was born on November 11, 1960, and was 51 years old at the alleged onset date. [Pl.'s Br., p. 4]. He applied for Social Security Disability Benefits on February 1, 2014, alleging an onset of disability beginning June 1, 2012. [R.P., p. 29].

Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013. [Id.]. Plaintiff alleges

4

disability due to high blood pressure, high cholesterol, diabetes with neuropathy and retinopathy, acid reflux disease, bowel issues from pancreas hernia, a double transplant, osteoporosis, tunnel vision and a weak immune system.". [Id. at 33-34].

A disability hearing was held on January 19, 2017. The ALJ heard testimony from Plaintiff and a Vocational Expert. The ALJ found Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act from June 1, 2012 through December 31, 2013. [Id. at 29].

In addition, Plaintiff filed an application for supplemental security income on January 24, 2014. Based on findings from a May 1, 2014 ophthalmological exam, the claimant was awarded benefits. Because the ALJ's decision deals only with the relevant time period starting June 1, 2012 through December 31, 2013, the ALJ stated that her decision did not disturb the supplemental security income benefits finding. [Id.]

**B. Plaintiff's Medical History and Testimony**

In January 2001, Plaintiff underwent surgery for a pancreas and kidney transplant. [Id. at 33]. In addition, Plaintiff has undergone 18 eye surgeries, all of which occurred prior to his disability onset date. [Id. at 34]. Plaintiff received medical care through the Bureau of Prisons Health Services while he was incarcerated from 2009 through February 2014.

Plaintiff's treatment records from 2010 through 2013 consistently revealed that Plaintiff's confrontation visual fields are extremely limited in both eyes. These records also indicated that Plaintiff has significant scarring in both eyes. Medical professionals informed Plaintiff that he would eventually lose his peripheral vision. [Id.].

Plaintiff testified at his hearing that he previously worked in maintenance/carpentry. [Id. at 58]. Plaintiff ceased working in June 2012 when he was incarcerated. [Id. at 54]. While in prison, Plaintiff worked in the woodshop, and "eventually weaned himself off the machines in towards the end of 2012/beginning of 2013 because of the potential danger due to his eye issues." [Id. at 34]. When asked about his peripheral vision, Plaintiff testified that his side peripheral vision is impacted, as well as above and below. [Id. at 55, 68]. Plaintiff also testified that he drives short distances in the daytime, on familiar roads, turning his head side to side in order to see peripherally. [Id.].

An impartial vocational expert ("VE") testified at the Plaintiff's hearing. The VE stated that the Plaintiff's past relevant work as a carpenter was medium to heavy in exertion and skilled in nature. [Id. at 73]. The ALJ consistently asked the VE hypothetical questions regarding depth perception, but not peripheral vision. [Id. at 73, 74, and 75]. The VE testified that a hypothetical person could not perform Plaintiff's past relevant

work as a carpenter, but could perform a number of jobs existing in the national economy, such as small products assembler, electrical accessories assembler, and plastic hospital products assembler," all of which the VE stated did not require changes in depth perception.[Id. at 75-76].

### III. ALJ'S DETERMINATION

The ALJ concluded that the Plaintiff was not "under a disability, as defined in the Social Security Act, at any time from June 1 2012, the alleged onset date through December 31, 2013, the date of last insured." [Id. at 37]. Relevant to the issues presented on appeal, the ALJ found that the plaintiff has the following severe impairments: "diabetes with retinopathy and status-post kidney pancreas transplant."[1] [Id. at 31]. The ALJ also found Plaintiff has non-severe impairments of "hypertension, gastroesophageal reflux disease, status-post cataract surgery in the right eye and osteopenia.". [Id. at 32].

The ALJ determined Plaintiff's residual functional capacity (RFC) concluding that he was able to perform light work with

---

[1] Diabetic retinopathy "affects blood vessels in the light-sensitive tissue called the retina that lines the back of the eye. It is the most common cause of vision loss among people with diabetes and the leading cause of vision impairment and blindness among working-age adults." Facts About Diabetic Eye Disease, National Eye Institute, (Sept. 2015), https://nei.nih.gov/health/diabetic/retinopathy.

7

postural and physical limitations. [Id. at 33]. Specifically, the ALJ's RFC determination states that Plaintiff "requires a job involving no more than occasional changes in depth perception; and was expected to be off-task 5% of the workday in addition to normal breaks due to symptoms."[Id.].

During her Step Four analysis, the ALJ determined that the Plaintiff could not perform any past relevant work, and at Step Five, concluded that Plaintiff could perform a significant number of jobs that exist in the national economy such as an assembler for small products, assembler for electrical accessories, and an assembler for plastic hospital products. [Id.].

**IV. ANALYSIS**

Remand is appropriate for the following reason as set forth below.

**A. ALJ's Formulation of the RFC**

Plaintiff asserts that the ALJ erred in her RFC assessment because she did not account for Plaintiff's significant deficits in his peripheral vision. This Court finds that the ALJ did not properly explain how her depth perception limitation in the RFC translates to the Plaintiff's severe impairment of diabetic retinopathy and Plaintiff's resulting peripheral vision limitations.

During the relevant time period, numerous visual field tests performed by Plaintiff's medical examiners revealed Plaintiff's "confrontation visual fields [are] limited" in both eyes.[2] [Pl.'s Br., p. 5-6]. Furthermore, Plaintiff testified at length as to his limited peripheral vision:

> Q: Okay. Tell me a little bit about what visual problems you were having back then . . . What do you – how do you see the world?
>
> A: I – my peripheral vision is bad on both sides, and lower . . . when I walk, I will usually look down most of the time, because I don't see what's below me to walk into . . .
>
> Q: And with regard to – you said that you have difficulty looking down, you know, you have to look down when you walk.
>
> A: Yea. Peripheral vision, to most people, just think it's the sides . . . Maybe there is another term for it. But the peripheral, also for me, is above and below.

[R.P., p. 55, 67-68].

In formulating the RFC, the ALJ concluded without explanation, that the Plaintiff had the residual functioning capacity to perform light work, involving "no more than occasional changes in depth perception." [Id. at 33]. This Court notes that there is a significant difference between depth perception, which

---

[2] A confrontation visual field exam asks the patient to cover one eye and look directly at an object straight ahead. The examiner moves his hand in and out of the patient's peripheral visual field to screen for problems. Kierstan Boyd, *Visual Field Test*, American Academy of Ophthalmology, (Jan. 17, 2019), https://www.aao.org/eye-health/tips-prevention/visual-field-testing.com.

is the ability to perceive relative distance, and peripheral vision, which is the visual field outside of the direct line of vision. Peripheral vision loss is also commonly referred to as "tunnel vision."

Given the Plaintiff's lengthy testimony detailing his symptoms of his tunnel vision and the medical records detailing his 18 eye surgeries and medical exams that consistently noted Plaintiff's limited peripheral vision, it appears that there may have been a disconnect between the ALJ's RFC determination which provides for a depth perception limitation, which may not necessarily account for the Plaintiff's diabetic retinopathy, and related tunnel vision symptoms. It is especially perplexing with respect to the VE's testimony that a person who had to turn his head to significant degree in order to locate the items on the left and the right, "would not be able to meet competitive production standards" of the jobs the ALJ found the Plaintiff had the ability to perform. [R.P., p. 81].

While the ALJ is entitled to establish any RFC appropriate to a claimant supported by the evidence, the ALJ's RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). See also Fargnoli v. Halter, 247 F.3d 34, 41 (3d Cir. 2001). The ALJ did not provide any clear explanation or evidentiary support that the depth perception limitation accounted

for the Plaintiff's tunnel vision symptoms, even though the record evidence could potentially support such limitation, if credited by the ALJ. However, this Court will not speculate as to the reason the ALJ chose this particular limitation, or whether this limitation is appropriate. "The Court cannot weigh the evidence or substitute its conclusions for those of the ALJ[.] . . . Without the ALJ performing the analysis, the Court also cannot determine whether the ALJ's decision is supported by substantial evidence." Curry v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 29798, *12 (D.N.J. Mar. 2, 2017).

Therefore, the Court finds that this matter must be remanded for further proceedings so that the ALJ can set forth her reasoning, based on the record evidence, for whether or not the depth perception limitations is appropriate.

Lastly, the Court declines to address Plaintiff's remaining claims of error as they may be affected by the ALJ's review of this case on remand to include Plaintiff's additional arguments.

## V. CONCLUSION

For the reasons expressed above, the Court **vacates** the ALJ's decision and **remands** for proceedings consistent with the above analysis.

**ACCORDINGLY**, it is on this 17th day of July, 2019,

**ORDERED** that the decision of the Administrative Law Judge is

**VACATED** and this case is **REMANDED** for further proceedings consistent with this Memorandum Opinion; and it is further

**ORDERED** that the Clerk of Court shall close this case.

```
             ___s/ Renée Marie Bumb___
             RENÉE MARIE BUMB, U.S.D.J.
```